IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES MUNSON, # N-95249, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-00062-MJR |
| ) | |
| DR. ROBERT L. SHEARING, ) | |
| MICHAEL NELSON, DR. TROST, ) | |
| WARDEN RICHARD HARRINGTON, ) | |
| DIRECTOR S. A. GODINEZ, ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| and DR. RITZ, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff James Munson, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983. According to the complaint, Plaintiff suffers from a suspected soy allergy, and his many requests for allergy testing, a soy-free diet, and medical care have been denied during his incarceration at Menard. As a result, he suffers from a broad range of symptoms that include chronic diarrhea, gastrointestinal distress, and weight loss, among other things. Plaintiff now sues seven defendants for violating his First, Eighth, and Fourteenth Amendments rights. They include Defendants Godinez (Illinois Department of Corrections' ("IDOC") director), Wexford Health Sources, Inc. ("Wexford"), Ritz (Wexford physician), Harrington (warden), Shearing (medical director), Trost (medical director), and Nelson (medical technician). Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief, including a temporary restraining order and a preliminary injunction (Doc. 1-3, p. 35).

1

**Merits Review Under 28 U.S.C. § 1915A**

This matter is now before the Court for preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).  When reviewing the allegations in light of this standard, the Court finds that the complaint survives preliminary review.

**The Complaint**

Plaintiff is currently serving a life sentence at Menard for murder.  According to the complaint,[1] his diet consists largely of soy-based products.  However, Plaintiff cannot tolerate soy.  For years, he has suffered from symptoms of a suspected soy allergy.  His symptoms include chronic diarrhea (three times each day), dehydration, severe stomach pains, severe flatulence, hemorrhoids, neck pain, back pain, nutritional deficiencies, weakness, fatigue, and weight loss (20-25 pounds) (Doc. 1-1, p. 3; Doc. 1-2, pp. 5, 12, 20).

Over the years, Plaintiff has repeatedly asked Menard and Wexford officials for a diagnosis and treatment of the underlying condition.  Specifically, he has requested an allergy test and a soy-free diet, both of which multiple off-site "tel-a-med" physicians have recommended (Doc. 1-1, p. 14; 1-2, p. 4).  However, his requests have been denied by on-site

---

[1] The initial pleading that Plaintiff filed with the Court on January 21, 2015, spans well over 300 pages. Pleadings of this length are generally discouraged because Defendants cannot readily respond to them. While a complaint of this length normally runs afoul of Federal Rule of Civil Procedure 8, Plaintiff's complaint defies the odds.  The document is organized and focused.  The statement of claim, summarized herein, can be found at Documents 1-1 and 1-2.  A motion for temporary restraining order and preliminary injunction, along with a supporting affidavit and memorandum of law, is located at Document 1-3.  Finally, the exhibits, which primarily consist of grievances and medical records, account for the bulk of Plaintiff's filing and are currently on file in hard copy with the Court but not in CM/ECF.

officials and Wexford. Only some of Plaintiff's symptoms have been treated, but even this treatment is sporadic. In his own words, Plaintiff faces a "Catch-22." He cannot receive a soy-free diet without a test confirming that he suffers from a soy allergy, but the denial of testing deprives him of the ability to receive a soy-free diet.

In 2011, Plaintiff filed a lawsuit to address his dietary and health concerns, among other issues. *See Munson v. Gaetz, et al.*, Case No. 11-cv-159-GPM (S.D. Ill., filed March 2, 2011).[2] Like several other lawsuits addressing soy diet claims, Plaintiff's lawsuit was stayed in June 2014, pending the outcome of a Central District case concerning soy in prisoners' diets. *See Harris, et al. v. Brown, et al.*, Case No. 07-3225 (C.D. Ill. 2007); *Flowers v. Wexford, et al.*, Case No. 13-2118 (C.D. Ill. 2013); *Adams v. Godinez, et al.*, Case No. 12-3272 (C.D. Ill. 2012). In the instant action, Plaintiff claims that his medical and dietary needs have still not been addressed. His complaint focuses on events occurring in 2013 and 2014, and his claims are directed at different defendants.

Specifically, Plaintiff alleges that he met with Defendant Shearing on April 8th and May 31, 2013 (Doc. 1-1, pp. 3-4). Each time, he reported the symptoms described above and asked Defendant Shearing to test him for a soy allergy and prescribe a soy-free diet. Defendant Shearing refused, saying "I'm not giving you nothing. You filed your lawsuit. . . . [G]et the Court to order the test" (Doc. 1-1, pp. 5-6). Plaintiff alleges that Defendant Nelson was present at one or more of these appointments.

Plaintiff subsequently met with two "tel-a-med" physicians, Drs. Young and Patel,[3] on three separate occasions. In September 2013, Dr. Young prescribed Ensure, which Menard officials never actually provided to Plaintiff (Doc. 1-2, pp. 1-2). In December 2013 and

---

[2] Plaintiff asserts similar claims against different defendants based on separate conduct that occurred prior to the events giving rise to this action (Doc. 1-1, p. 3).
[3] Neither individual is named as a defendant in this action.

September 2014, Dr. Patel recommended that Plaintiff get tested for a soy allergy and consume only soy-free foods (Doc. 1-1, p. 14; Doc. 1-2, p. 4).

Plaintiff also met with Defendant Trost several times in 2014. The first meeting was in response to Plaintiff's complaints that he suffered from food poisoning after eating hot dogs in January 2014 (Doc. 1-1, pp. 16-19). Each time he consumed the food (on January 13th, 15th, and 19th), Plaintiff became violently ill. He reported his symptoms (i.e., throwing up, diarrhea, and stomach cramps) to several Menard officials before writing directly to Defendant Trost around January 19, 2014, and twice thereafter (Doc. 1-1, p. 17).

Plaintiff did not actually meet with Defendant Trost until March 4, 2014 (Doc. 1-1, p. 19). By that time, he was no longer suffering from food poisoning. However, his symptoms related to the soy allergy persisted. He described these symptoms to Defendant Trost and requested a soy allergy test, a soy-free diet, and treatment of his symptoms. Defendant Trost denied Plaintiff's request for a soy-free diet, explaining that he would have to prescribe all prisoners a soy-free diet if he granted Plaintiff's request. Defendant Trost instead treated Plaintiff's symptoms, by giving him fiber pills (Doc. 1-1, p. 20). Defendant Trost did not refer Plaintiff for a soy allergy test until seven months later in October 2014.

By that time, Plaintiff had already submitted three requests for testing and a soy-free diet directly to Wexford on August 20th, September 30th, and October 21st, 2014 (Doc. 1-2, pp. 4, 16; Doc. 1-3, p. 1). Defendant Ritz, who acted on behalf of Wexford, denied the requests (Doc. 1-2, p. 6). Plaintiff alleges that Wexford systematically denied his treatment requests based on a "cost-over-care" policy (Doc. 1-2, p. 10).

Plaintiff also wrote directly to Defendant Harrington seeking a diagnosis and treatment; consistent with his custom, policy, or practice, Defendant Harrington allegedly

4

ignored Plaintiff's requests (Doc. 1-2, p. 8). Finally, Plaintiff claims the Defendant Godinez failed to ensure proper diagnosis and treatment of Plaintiff's condition, despite receiving notice of his complaints through the grievance process (Doc. 1-2, p. 13).

Plaintiff now asserts a First Amendment retaliation claim, Eighth Amendment inadequate nutrition claim, Eighth Amendment deliberate indifference to serious medical needs claim, and a Fourteenth Amendment equal protection claim. He seeks declaratory judgment, monetary judgment, and injunctive relief. As will be discussed in more detail below, Plaintiff also seeks a temporary restraining order and a preliminary injunction.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint into five separate counts, as set forth below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion as to their merit.

**Count 1:** **Defendant Shearing retaliated against Plaintiff for filing a 2011 lawsuit by denying his requests for medical care in 2013-14, in violation of the First Amendment;**

**Count 2:** **Defendants deprived Plaintiff of a nutritionally adequate diet, in violation of the Eighth Amendment;**

**Count 3:** **Defendants exhibited deliberate indifference to Plaintiff's serious medical needs by refusing to diagnose or treat his suspected soy allergy and related symptoms, in violation of the Eighth Amendment;**

**Count 4:** **Defendant Trost displayed deliberate indifference to Plaintiff's medical needs when he failed to meet with him to address his concerns regarding food poisoning for nearly fifty days, in violation of the Eighth Amendment; and**

> **Count 5:** Defendants deprived Plaintiff of equal protection of the law by denying him access to medical care because of his race.

Subject to those exceptions discussed below, Plaintiff shall be allowed to proceed with **Counts 1, 2, 3,** and **4** against those defendants identified in connection with each claim above.[4]

**Dismissal of Claims and Parties**

**A.    Count 5 – Equal Protection Claim**

The complaint articulates no equal protection claim (**Count 5**) against Defendants. To state a claim, a plaintiff must establish that a state actor has purposely treated Plaintiff differently than persons of another race. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment unless it is narrowly tailored to serve a compelling state interest. *Id.*

In addition, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Courts cannot "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

According to the allegations, Defendants denied Plaintiff an adequate diet and medical care based on his race. However, these allegations are conclusory. No example of any statement or conduct by a single defendant is offered in support of Plaintiff's claim. Under the

---

[4] Plaintiff shall not be allowed to proceed with any claim against any defendant who is not identified in this Order, and any such claim should be considered to be dismissed without prejudice.

circumstances, the complaint does not suggest that any particular defendant made a decision to deprive Plaintiff of a constitutional right because of his race. The complaint also does not suggest that a policy, custom, or practice resulted in a similar deprivation. Accordingly, **Count 5** shall be dismissed without prejudice.

**B.     Defendant Godinez**

The allegations do not suggest that Defendant Godinez was personally involved in a constitutional deprivation. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).

The allegations suggest that Defendant Godinez's involvement in this matter was limited to his review of grievances. According to the complaint, the review of Plaintiff's grievances put Defendant Godinez on notice of Plaintiff's medical needs, and Defendant Godinez failed to ensure that those needs were adequately addressed. However, this theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of *respondeat superior* does not apply to Section 1983 actions). The fact that a counselor, grievance officer, or even a supervisor received a complaint about the actions of another individual does not create liability. In order to be held individually liable, a defendant must be "personally responsible for the

7

deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

The allegations do not suggest that Defendant Godinez, a non-medical professional, personally participated in denying Plaintiff adequate medical care. If a prisoner is under the care of prison medical professionals, non-medical prison officials "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to provide a gratuitous rescue service." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). No allegations suggest that Defendant Godinez had any involvement in the alleged denial of Plaintiff's medical care and a soy-free diet, either directly by making a decision to deny these things or indirectly through the establishment of a policy, custom, or practice that resulted in a denial. Likewise, no allegations suggest that Defendant Godinez retaliated against Plaintiff. Simply put, no claim has been stated against Defendant Godinez in this action. Accordingly, Defendant Godinez shall be dismissed without prejudice.

### Relief Requested

Along with the complaint, Plaintiff filed an Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order ("TRO") (Doc. 1-3, pp. 3-6), a supporting memorandum of law[5] (Doc. 1-3, pp. 7-22), and an affidavit (Doc. 1-3, pp. 31-34). Plaintiff seeks an order compelling Defendants to immediately provide him with a soy-free diet,

---

[5] The memorandum of law describes events that date back to 2009. Plaintiff summarizes his past claims against different defendants, as well as his prior attempts to secure injunctive relief against them. As such, the description exceeds the scope of the present action. However, the memorandum goes on to address Plaintiff's present claims against the named defendants for conduct occurring in 2013-14, which the Court will consider in support of his request for injunctive relief.

8

gastrointestinal evaluation, upper endoscopy, colonoscopy, full body CT scan, and MRI, among other things (Doc. 1-3, pp. 3-6).

Plaintiff's request for a TRO shall be denied without prejudice at this time. A TRO can be issued without notice to the party to be enjoined, but it may last no more than fourteen days. FED. R. CIV. P. 65(b)(2). Further, a TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

Based on the allegations in the complaint, the order to show cause, and the supporting pleadings, it would not be appropriate to enter an order for this drastic form of relief at this time. Although Plaintiff describes a long history of symptoms that the Court takes very seriously, the complaint is devoid of allegations suggesting any change (for the worse) in these symptoms during the three months leading up to his filing of this action. Even so, he seeks a comprehensive set of diagnostic procedures and treatment. The Court does not deem it appropriate to order these medical tests without first considering the response of Defendants (several of whom are Plaintiff's medical providers). Accordingly, the **TRO** is **DENIED without prejudice** to Plaintiff renewing this request, should it become necessary to do so.

But Plaintiff also seeks a preliminary injunction. In contrast to a TRO, a preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. FED. R. CIV. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in

9

the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Plaintiff's request for preliminary injunctive relief warrants further consideration. Accordingly, the clerk shall be directed to add Plaintiff's motion for preliminary injunction as a separate docket entry. Plaintiff's request for a **PRELIMINARY INJUNCTION** is **REFERRED** pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c) to **United States Magistrate Judge Stephen C. Williams**, who shall resolve the request as soon as practicable and issue a report and recommendation. If it becomes apparent that further action is necessary, the undersigned Judge should be notified immediately. Any motions filed after the date of this Order that relate to this request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to **United States Magistrate Judge Williams**.

### Pending Motions

Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) shall be addressed in a separate Order of this Court.

Plaintiff's motion to appoint counsel (Doc. 3) shall be **REFERRED** to **United States Magistrate Judge Williams** for a decision.

### Disposition

Plaintiff's request for a temporary restraining order is hereby **DENIED** without prejudice.

The **CLERK** is **DIRECTED** to add Plaintiff's motion for a preliminary

injunction as a separate docket entry in CM/ECF.

**IT IS HEREBY ORDERED** that **COUNT 5** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ALSO ORDERED** that Defendant **GODINEZ** is **DISMISSED** without prejudice from this action, based on the failure to state a claim against this defendant.

**IT IS HEREBY ORDERED** that as to **COUNTS 1, 2, 3,** and **4**, the Clerk is directed to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **SHEARING, NELSON, TROST, HARRINGTON, RITZ,** and **WEXFORD**. The Clerk shall issue the completed summons, and prepare a service packet for each Defendant consisting of: the completed summons, the completed form USM-285, a copy of the complaint (Doc. 1), and this memorandum and order. The Clerk shall deliver the service packets for each Defendant to the United States Marshal Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order (on or before February 10, 2015),** the United States Marshals Service **SHALL personally serve** upon Defendants **SHEARING, NELSON, TROST, HARRINGTON, RITZ,** and **WEXFORD**: the service packets containing the summons, form USM-285, a copy of the complaint (Doc. 1), and this memorandum and order. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service. The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's motion for preliminary injunctive relief.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration

by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's motion to appoint counsel (Doc. 3) and resolution of Plaintiff's request for a preliminary injunction as soon as practicable, to include a report and recommendation. If it becomes apparent that further action is necessary, the undersigned Judge should be notified immediately. Further, this entire matter shall be **REFERRED** to **United States Magistrate Judge Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 27, 2015**

**s/ MICHAEL J. REAGAN**
**Chief Judge**
