IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES MUNSON, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-62-MJR-SCW |
| ) | |
| ROBERT L. SHEARING, MICHAEL ) | |
| NELSON, DR. TROST, RICHARD ) | |
| HARRINGTON, WEXFORD HEALTH ) | |
| SOURCES, INC., and DR. RITZ, ) | |
| Defendants. | |

REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

This case is before the Court on Plaintiff's motion for preliminary injunction (Doc. 7) as set forth in Plaintiff's original complaint (Doc. 1). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Plaintiff's motion for preliminary injunction.

### FINDINGS OF FACT

**A. Procedural Background**

Plaintiff, an inmate currently at Menard Correctional Center, filed this 42 U.S.C. § 1983 complaint on January 21, 2015 (Doc. 1) alleging that various defendants were deliberately indifferent to his serious medical need. In addition to his claim that he was denied proper medical care, Plaintiff's complaint also alleged that Defendant Shearing retaliated against Plaintiff for filing a

previous lawsuit by denying him medical care.

As narrowed by the Court's threshold order, Plaintiff's complaint alleges that at Menard Correctional Center his diet consists largely of soy-based products. Plaintiff alleges, however, that he cannot tolerate soy and has, in fact, displayed symptoms consistent with what he believes is a soy allergy (Doc. 6, p. 2). Plaintiff claims that he suffers from chronic diarrhea, dehydration, severe stomach pains, severe flatulence, hemorrhoids, neck pain, back pain, nutritional deficiencies, weakness, fatigue, and weight loss (*Id.*).

Plaintiff alleges that he has continued to seek a diagnosis and treatment for his condition while at Menard. Plaintiff alleges that he has requested an allergy test and a soy-free diet. All such requests, however, have been denied. The undersigned notes that Plaintiff has previously filed a complaint about his diet and health issues, but that case was stayed until June 2014 while awaiting the outcome of a similar case in the Central District which also concerned soy in prisoner's diets. *Munson v. Gaetz*, **Case No. 11-cv-159-NJR (S.D.Ill., filed March 2, 2011).** *See also Harris v. Brown*, **Case No. 07-3225 (C.D. Ill. 2007);** *Flowers v. Wexford*, **Case No. 13-2118 (C.D. Ill. 2013);** *Adams v. Godinez*, **Case No. 12-3272 (C.D. Ill. 2012).** In his current case, Plaintiff claims that his medical needs are still not being addressed and that various individuals, not in his previous case, are also deliberately indifferent to his medical condition (Doc. 6, p. 3).

As part of Plaintiff's complaint, Plaintiff sought a preliminary injunction compelling Defendants to provide him with a soy-free diet as well as a gastrointestinal evaluation, upper endoscopy, colonoscopy, fully body CT scan, and MRI (Doc. 6, pp. 8-9). The Court construed the request as a motion for preliminary injunction and directed Defendants to respond to the motion (Doc. 23).

Both the Wexford Defendants and the IDOC Defendants filed responses to Plaintiff's motion

(Docs. 35 and 36, respectively). The Wexford defendants, including Defendants Shearing, Ritz, Larson, and Wexford Health Sources indicated that food sensitivity diets are generally not recognized by the Illinois Department of Corrections and instead, inmates are educated on what foods to avoid if they have food sensitivities (Doc. 35, p. 2). But, if an inmate has a sensitivity or allergy to a major food group, or avoidance of the specific food would compromise an inmate's nutritional requirements, the inmate can then petition for a special diet which is approved by the Food Service Administrator and Agency Medical Director (*Id.*). They also argued that while numerous inmates claim to have soy allergies, soy allergies are actually rare. Plaintiff was examined for his gastrointestinal problems and he did not display any signs of anaphylaxis normally associated with a soy allergy. Plaintiff was still advised, however, to avoid foods containing soy (*Id.* at pp. 3-4). Further, the IDOC defendants, including Defendants Harrington and Nelson argued that Plaintiff was not entitled to a preliminary injunction because he had not shown that he would suffer irreparable harm (Doc. 36, p. 3). Although Plaintiff stated that he suffered from numerous symptoms which he believes are attributable to his soy-based diet, Defendants argued that Plaintiff based this finding on his own belief and not facts in the record. Defendants further argued that Plaintiff was not qualified to determine what treatment he needed for his perceived conditions.

After reviewing the parties' filings, the undersigned directed the defendants to provide the Court with Plaintiff's relevant medical records as they were not currently in the record (Doc. 39). Further, the undersigned directed the Wexford defendants to provide a basis for their indication that Plaintiff had previously been advised to avoid soy even though it was not believed that he had a soy allergy (*Id.*).

Defendants filed a supplemental response providing the medical records related to Plaintiff's claims. Defendants also noted that Defendant Trost had stated in a previously submitted affidavit

that Plaintiff did not exhibit symptoms of a true soy allergy, but he was still advised to avoid soy foods to avoid any intolerance he might have to the food group (Doc. 42, p. 2; Doc. 38). Defendants also noted that Plaintiff had helicobacter pylori (hereinafter H. pylori) which may cause abdominal issues and Plaintiff had previously experienced gastrointestinal issues associated with medications he was taking (*Id.*). Dr. Trost requested that Plaintiff be referred to an allergist due to Plaintiff's continued requests for a special diet, but that request was ultimately denied (*Id.* p. 3). Defendants also noted that a review of Plaintiff's commissary purchases revealed that he purchased numerous products containing soy even after being counseled to avoid soy (*Id.*). Plaintiff filed a reply acknowledging that he did previously suffer from helicobacter pylori but that he still suffers from abdominal issues after being treated for the condition (Doc. 45, p. 4). Plaintiff also acknowledged that he had purchased items from the commissary containing soy but he has never suffered gastrointestinal issues from the consumption of those items (Doc. 45, p. 5).

### B. Preliminary Injunction Hearing

The undersigned held a hearing on Plaintiff's motion for preliminary injunction on July 9, 2015. At the hearing, Plaintiff testified that starting in 2009 he began having severe stomach problems which he believed was related to the food he was eating, namely a large amount of soy found in his vegetarian diet. Plaintiff asked to be tested for a soy allergy but was denied that request. Plaintiff testified that he suffers from diarrhea, upset stomach, hemorrhoids, bleeding, cramps, and having to use the restroom numerous times during the day. Plaintiff believes that this is a result of the soy found in the foods offered in the dietary. Plaintiff testified that his symptoms fluctuate but that he finds his symptoms have improved when he stopped eating food from the dietary. When he doesn't eat the dietary food he is able to purchase food through the commissary.

Plaintiff testified that he does eat food from the commissary - he acknowledges that numerous

items purchased there do contain soy - but that none of the commissary food has ever caused him any gastrointestinal problems.  Plaintiff testified that in the commissary he purchases beans, rice, noodles, pasta, pastries, and sometimes tuna, although he tries not to consume animal products due to his religious beliefs.

Plaintiff also indicated that many of the items from the dietary that cause him stomach problems are meat products which contain textured vegetable protein (hereinafter "TVP").  These include sloppy joes, chicken patties, meatballs, polish sausages, hotdogs, and hamburgers.  Plaintiff testified that plain chicken and fish do not bother him and he is also able to eat the vegetables and pasta from dietary as long as they are not mixed with any of the meat products containing TVP. Vegetables that Plaintiff eats include carrots, potatoes, mixed vegetables, corn, and plain rice. Plaintiff stated that he is not currently on a special diet, although he previously was on a vegetarian diet for religious concerns but took himself off the diet when he discovered it had too much TVP.  He is able to avoid the items with TVP and has learned what items cause his gastrointestinal problems. Even when Plaintiff is unable to eat the main entrée, he is usually able to eat other things on the tray including the vegetables and bread.  Plaintiff testified that he is able to avoid TVP because he knows what items he can and cannot eat.  Plaintiff also testified that he has maintained his weight of 162 pounds for the past several months.

At the hearing, John Trost, a medical doctor at Menard Correctional Center, also testified about Plaintiff's gastrointestinal issues.  Trost testified that while Plaintiff believes that he has a soy allergy, soy allergies are uncommon and that there is a difference between an allergy and an intolerance for certain foods.  Trost testified that there were other items in Plaintiff's medical history that could be causing his stomach distress besides a soy allergy.  Trost noted that Plaintiff had his gall bladder removed which can often lead to general food intolerance.  Trost also noted that Plaintiff previously

had the condition H. pylori which can cause gastrointestinal issues. He has also been on medication in the past which has caused stomach distress.

Trost testified that the medical staff at Menard has given Plaintiff fiber supplements and other medications to treat his stomach issues but that he does not believe that Plaintiff has a true soy allergy. At best, Trost testified that, Plaintiff may have an intolerance for soy but that cannot be determined by an allergy test. While Plaintiff asked to see an allergist and Trost presented that request to the collegial review, that request was ultimately denied because there was no basis in Plaintiff's medical history for an outside review by an allergist. Based on the medical records and Plaintiff's symptoms, the collegial review did not believe that Plaintiff presented a true allergy and there were other possible causes in his history for his abdominal distress. The collegial review also reviewed Plaintiff's previous commissary purchases (Defendant's Exhibit B) and found that a number of those items could also cause the symptoms Plaintiff described. Further, some of those items also contained soy but Plaintiff testified his stomach was not aggravated by those purchased products.

## CONCLUSIONS OF LAW

### A. Preliminary Injunction Standard

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing

*Winter*, **555 U.S. at 20).** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, **130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* **(citing** *Jordan v. Wolke*, **593 F.2d 772, 774 (7th Cir. 1978)).** *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, **260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

### B. Analysis

Here, the undersigned finds that Plaintiff has failed to show that he is entitled to a preliminary injunction because he has not shown that he is likely to suffer irreparable harm without the injunction.

Irreparable harm means that a plaintiff "is unlikely to be made whole by an award of damages or other relief at the end of the trial." *Vogel v. American Soc. of Appraisers*, **744 F.2d 598, 599 (7th Cir. 1984).**

Plaintiff has not shown that he will suffer any irreparable harm prior to trial. Plaintiff admitted at the evidentiary hearing that he knows what products irritate his stomach and he is able to avoid those products. He provided the Court with a list of items in the dietary that he believes contain TVP and causes him gastrointestinal distress. When those items are provided, Plaintiff testified that he avoids eating those, opting instead to eat the vegetables and bread that accompany the entrée containing TVP, or supplementing his meal with items from the commissary which do not cause him distress. In essence, Plaintiff does not eat the foods containing TVP. There is no evidence that Plaintiff is forced to eat TVP which would cause him stomach distress and Plaintiff acknowledged that he avoids items with TVP. Thus, there is no evidence of Plaintiff enduring any harm during the pendency of this suit because he is able to successfully avoid the items that cause him issues and which are at issue in this case. Further, Plaintiff testified that he has been able to maintain his weight during this time period, so there is no evidence that he will suffer any harm by avoiding the TVP products as he is currently doing.

Plaintiff's motion for preliminary injunction also asked for a referral to an allergist and an allergy test. The undersigned, however, finds no evidence that Plaintiff is suffering from a soy allergy as he admittedly eats items from the commissary that contain soy and the consumption of those items have no ill effect on Plaintiff as he acknowledged at the evidentiary hearing. Further, Dr. Trost testified that Plaintiff has not shown any signs of an allergic reaction from consuming soy. The undersigned is not able to rule out the possibility that Plaintiff may have some sensitivity to soy, buy it is unclear at this time what level of sensitivity Plaintiff possibly has to soy, if at all. Nor is the amount

of soy in food items from the dietary known at this time, so the undersigned is unable to determine whether there is more soy in items in the dietary as opposed to items Plaintiff consumes from the commissary and what effect that has on Plaintiff's gastrointestinal issues. But Trost testified that an allergy test would not test whether Plaintiff has a sensitivity to soy, nor would it show Plaintiff's tolerance for soy. Thus, the undersigned finds no evidence to suggest that an allergy test would be of any help to Plaintiff's condition at this time. Further, to the extent that Plaintiff's complaint argues that he is suffering from an undiagnosed soy allergy, the undersigned finds that he is unlikely to succeed on the merits as the evidence before the Court suggests that Plaintiff is not allergic to soy given that he admittedly ingests soy products from the commissary without an allergic reaction.

### CONCLUSION

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has not shown that he is entitled to injunctive relief at this time and **DENY** his motion for preliminary injunction (Docs. 1 and 7)

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **August 3, 2015.**

**IT IS SO ORDERED**.
DATED: July 15, 2015.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge