# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES MUNSON,
Inmate No. N95249

                            **Plaintiff,**

vs.

ROBERT SHEARING,
MICHAEL NELSON,
JOHN TROST,
RICHARD HARRINGTON,
WEXFORD HEALTH SOURCES, INC.,
and STEPHEN RITZ,

                        **Defendants.**

)
)
)
)
)
)
)
)
)
)
)

Case No.   15-cv-0062-MJR-SCW

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

## I.   INTRODUCTION

Pursuant to **42 U.S.C. § 1983**, *pro se* Plaintiff, now represented by counsel, filed his complaint alleging claims of retaliation and deliberate indifference to medical needs. Specifically, Plaintiff's complaint alleges that Defendant Shearing retaliated against Plaintiff for filing a 2011 lawsuit by denying his requests for medical care in 2013-14 (Count 1), that all Defendants deprived Plaintiff of a nutritionally adequate diet (Count 2), that all of the Defendants were deliberately indifferent to Plaintiff's serious medical needs by refusing to diagnose or treat Plaintiff for a soy allergy (Count 3), and that

Defendant Trost was deliberately indifferent in failing to address Plaintiff's concerns regarding possible food poisoning for nearly fifty days (Count 4).[1]

This matter is currently before the Court on two motions for summary judgment. Defendants Shearing, Ritz, Trost, and Wexford Health Sources, Inc. (hereinafter "Wexford") first filed a motion for summary judgment (Docs. 92 and 93).   Plaintiff has filed a response to that motion (Doc. 107) and Defendants have filed a reply (Doc. 112). Defendants Harrington and Nelson have also filed a motion for summary judgment (Doc. 100) which Plaintiff has filed a response to (Doc. 110).   The two Defendants have also filed a reply to that motion (Doc. 116).   Based on the following, the Court **GRANTS IN PART AND DENIES IN PART** the medical Defendants' motion for summary judgment (Docs. 92 and 93) and **GRANTS** the motion for summary judgment (Doc. 100) filed by Harrington and Nelson.

## II.   FACTUAL BACKGROUND

Plaintiff filed his *pro se* complaint on May 9, 2014 alleging claims of retaliation and deliberate indifference related to his concerns regarding soy in his diet (Doc. 1). Specifically, Plaintiff believes that he is allergic to soy and the medical Defendants have refused to diagnose or treat his condition in part due to Wexford's policies of keeping costs low (Doc. 6, p. 2).   Plaintiff also alleges that Defendant Harrington, warden at

---

[1]  Count 5 of this action was dismissed by this Court's threshold screening order (*See* Doc. 6 at p. 11).

Menard Correctional Center, knew about Plaintiff's complaints regarding his inadequate healthcare but did nothing to rectify the situation (*Id*. at p. 4-5).   Plaintiff further alleges that Medical Technician Nelson overheard Defendant Shearing tell Plaintiff he was not going to provide him with a soy-free diet because Plaintiff filed a lawsuit, but Nelson did nothing to rectify the situation (*Id*. at p. 3).

Plaintiff claims that he suffers from a possible soy allergy.   He has been complaining about abdominal issues since at least May 8, 2007 when he received an ultrasound for abdominal issues and was diagnosed with gall stones and possible peptic ulcer disease (Doc. 93-2, p. 1).   Subsequently, Plaintiff had his gallbladder removed (Doc. 93-3, p. 4).   Plaintiff also had a sigmoidoscopy in 2010 due to gastrointestinal issues (Doc. 93-2, p. 2).

Plaintiff previously asked for a change in diet in 2011 and Dr. Fahim informed Plaintiff that IDOC did not offer an alternative diet for soy (Doc. 93-2, p. 3).   Menard, however, does have a soy/T.V.P. free diet option for inmates and approval for said diet has to come from an inmate's treating physician (Doc. 107-16, p. 3; 107-17, p. 6).   Since at least August 2006 IDOC does not recognize a no-soy diet, but if there is a documented allergy, a memo with the offending foods is to be provided to dietary (Doc. 107-18, p. 4). Such meals are only provided to an inmate when deemed medically necessary by a treating physician (Doc. 107-19).

Plaintiff saw Dr. Shearing on May 31, 2013 for abdominal complaints (Doc. 93-2, p. 26).   Michael Nelson was present in the room on that date (Doc. 100-2, p. 38-39). Nelson took his temperature and blood pressure (*Id*. at p. 39).   Plaintiff informed Shearing of stomach pains and told him he was on Konsyl, a fiber supplement (*Id*.). Plaintiff told him he had constant diarrhea and was going to the restroom 3-4 times a day (*Id*. at p. 39-40).   Plaintiff requested both a soy-free diet and an allergy test, which Shearing denied (*Id*. at p. 40).   Plaintiff testified that Shearing told Plaintiff he would not give him anything because Plaintiff filed his complaint and should get the Court to make that order (*Id*. at p. 40-41).   Nelson was present in the room during the conversation but did not participate in the conversation; he only wrote down notes (*Id*. at p. 41).   Plaintiff testified that even though Nelson was present and knew the seriousness of Plaintiff's needs, Nelson did nothing nor does he believe that Nelson reported Shearing's comments to a higher authority (*Id*. at p. 42).   Nelson testified that he did not observe any activity that would require reporting on that date (Doc. 100-10, p. 2).   Shearing continued Plaintiff's prescription for Fibercon as Plaintiff indicated that it was helping (Doc. 93-2, p. 26).

On June 6, 2013 Plaintiff met with telemedicine doctor Dr. Jeremy Young for Plaintiff's HIV (Doc. 107-1, p. 1; 107-2).   Plaintiff complained about chronic diarrhea and abdominal pain which he believed was caused by soy in his diet (Doc. 107-1, p. 1).

Plaintiff had no side-effects to his HIV medication but complained that the soy in his diet caused him diarrhea 3-4 times a day but that when he ate food solely from the commissary the symptoms went away (Doc. 107-2).   Young deferred any change in his diet to IDOC staff but noted that if Plaintiff's complaints were true that his stomach issues appeared to be related to his diet (*Id*.).   He offered Imodium which Plaintiff declined because it had not helped him in the past (*Id*.).

On June 24, 2013 Plaintiff met with Nurse Moldenhauer indicting that he was experiencing cramping and diarrhea and requested a soy allergy test (Doc. 93-2, p. 31). Moldenhauer told him she could only refer him to Dr. Shearing, but an x-ray was ordered for the next day (*Id*.).   The x-ray showed a moderate amount of stool in the colon associated with constipation (Doc. 93-2, p. 32).   Plaintiff also had a blood test on July 15, 2013 for H.pylori which came back negative (Doc. 107-4).

Plaintiff again saw Young on September 12, 2013 and complained about constant abdominal pain and diarrhea 3-8 times per day (Doc. 107-6).   Plaintiff noted that he was suffering from weight loss and sought a dietary supplement (*Id*.).   Young noted that if Plaintiff's statements were true that his condition seemed to be related to his diet (*Id*.). He prescribed Ensure three times per day but noted that he would not normally manage an inmate's diet and that medical staff could contact him if the request was unreasonable (*Id*.).   Young noted that a trial of Ensure seemed reasonable given Plaintiff's complaints

of diarrhea and the fact that Plaintiff lost seven pounds (*Id*.).   Plaintiff testified that he was never given a dietary supplement (Doc. 107-1, p. 2).

Plaintiff was seen by another telemedicine doctor, Dr. Mahesh Patel, for his HIV on December 9, 2013 (Doc. 107-7; 107-8).   Plaintiff noted his abdominal issues and diarrhea (Doc. 107-7).   He also indicated that he had weight loss (*Id*.).   Patel noted that his diarrhea and weight loss were concerning and noted the weight loss was most likely due to Plaintiff avoiding all foods with soy (*Id*.).   Patel indicated that a soy allergy test should be considered but ultimately deferred to medical staff at the prison as Plaintiff's stomach issues were not related to his HIV (*Id*.).

Plaintiff saw Dr. Trost on April 1, 2014 for a cough and diarrhea (Doc. 93-2, p. 15). Trost ordered blood work and a stool sample (*Id*.).   Those tests came back negative for C. diff infection (*Id*. at p. 16).   Plaintiff was seen again by Trost on September 5, 2014 for stomach cramps and diarrhea (Doc. 93-2, p. 17).   Trost prescribed Bentyl and Fibercon (*Id*.).

Plaintiff was seen again by Dr. Patel on September 26, 2014 (Doc. 107-11).   Patel noted that Plaintiff had lost fifteen pounds since July (*Id*.).   Patel requested twice monthly weight checks and deferred a request for a soy allergy test to Plaintiff's medical providers at the prison (*Id*.).

Dr. Ritz denied a request for soy allergy test after a collegial review between him

and Dr. Trost because Plaintiff's commissary list included items that contained soy (Doc.

107-12).   Ritz ordered that observation be continued and noted that Trost may test for

celiac disease if symptoms continued (*Id*.).   Plaintiff received a blood test for celiac

disease which came back negative (Doc. 107-13).   Another test for H. pylori on

November 3, 2014 also came back negative (Doc. 107-14).

The medical defendants also admitted facts in their answer to the complaint (Doc.

30).   Specifically, the medical defendants admitted the following allegations:

- Wexford strict policies and practice resulted in violating Plaintiff's constitutional rights and allowed Plaintiff to be neglected and out right denied medical treatment (Doc. 1-2, p. 10 ¶ 83; Doc. 30, p. 11 ¶83). ;

- Wexford is paid an undisclosed amount of money to provide medical service to the prisons.   The less treatment and medications Wexford has to provide the more money the corporation makes.   Therefore, Wexford has an incentive to neglect or out right deny medical treatment by extension through its medical staff and policies and practices (Doc. 1-2, p. 10 ¶ 84; Doc. 30, p. 11 ¶84);

- In which Wexford policies and practice do not allow the staff to provide proper and necessary treatment to inmates when it's needed (Doc. 1-2, p. 10 ¶ 85; Doc. 30, p. 11 ¶ 85);

- Wexford's policies and practices enforce their staff to be deliberately indifferent to Plaintiff, violating his constitutional rights by refusing him treatment of pain medication, allergy test, and soy free diet.   In which soy is the underlying cause of Plaintiff's diarrhea and stomach pains (Doc. 1-2, p. 10 ¶86; Doc. 30, p. 11 ¶ 86).

To each of the above allegations, the medical defendants responded "[t]hese defendants

admit paragraph[s] [83-86]" (Doc. 30 at p. 11).

Defendant Michael Nelson is a Correctional Medical Technician at Menard

Correctional Center (Doc. 100-10, p. 1).   As a medical technician, Nelson is paired with a doctor and assists the doctor when he sees patients, including taking vitals, providing the medical chart, and providing the doctor with any supplies during the visit (*Id*.). Nelson did not have the authority to make decisions regarding treatment nor could he overrule a doctor's medical decision (*Id*.).   Plaintiff testified that he saw Nelson more than ten times when Plaintiff was seen by a physician (Doc. 100-2, p. 35-36).   Nelson has taken blood from Plaintiff and was present when Plaintiff saw the doctor (*Id*.).   He also sometimes saw Plaintiff before seeing the doctor and Nelson would refer him to the doctor, although Plaintiff acknowledged that the majority of the time, Nelson is in with the doctor, taking vitals and temperatures and writing down the doctor's notes (*Id*. at p. 37-38).

Defendant Richard Harrington was the Chief Administrative Officer at Menard from February 8, 2013 to April 16, 2014 (Doc. 100-3, p. 1).   He is not a medical professional nor does he provide treatment to inmates (*Id*.).   Harrington testified that he sometimes received grievances about inmate medical care, or an inmate not being seen by medical, and he would delegate those grievances to medical staff as he could not change an inmate's treatment (*Id*. at p. 2).   If an inmate complained that he was not being seen by medical staff, then he would contact nursing staff to determine why an inmate was not seen (*Id*.).   He might also direct nursing staff to treat the grievance as a

sick call request so that an inmate would be seen (*Id.*).   Harrington testified that he did not receive any emergency grievances from Plaintiff during the relevant time period (Doc. 100-3, p. 3).

Harrington testified that he received a letter from Roosevelt Munson on July 26, 2013 complaining about Plaintiff's medical care (Doc. 100-4).   The letter indicated that Roosevelt was forwarding a letter from Plaintiff to the warden and that Plaintiff was being denied medical care (*Id.*; 110-3).   In response, Harrington noted that Plaintiff had not followed proper procedures regarding filing a grievance and that his grievance was returned to him (Doc. 100-5).   However, Harrington noted that Plaintiff's medical concerns were documented by the Health Care Unit, who was addressing Plaintiff's medical issues (*Id.*).   Harrington testified that he reviewed Plaintiff's medical records to determine whether Plaintiff was receiving treatment and he concluded that Plaintiff was receiving treatment from the Health Care Unit (Doc. 100-3, p. 3; 100-6).   Plaintiff testified that Harrington took no action to order the medical staff to provide an allergy test (Doc. 100-2, p. 47-48).

### III.   LEGAL STANDARDS

### A. Summary Judgment

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)). A fact is material if it is outcome determinative under applicable law. *Id.* at 48; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

On summary judgment, the Court considers the facts in the light most favorable

to the non-movant.  *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).**   The Court

adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l*

*Athletic Sportswear, Inc. v. Westfield Ins. Co.,* **528 F.3d 508, 512 (7th Cir. 2008).**     Even

if the facts are not in dispute, summary judgment is inappropriate when the information

before the court reveals that "alternate inferences can be drawn from the available

evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004)**, *abrogated on other*

*grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).**   *See also Anderer v. Jones*, **385**

**F.3d 1043, 1064 (7th Cir. 2004).**   However, "[a] party will be successful in opposing

summary judgment only when they present definite, competent evidence to rebut the

motion."   *E.E.O.C. v. Sears Roebuck & Co.*, **233 F.3d 432, 437 (7th Cir. 2000)**. **(internal**

**citation omitted).**

## B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and

unusual punishments" if they display deliberate indifference to an inmate's serious

medical needs.   *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005) (quoting** *Estelle v.*

*Gamble*, **429 U.S. 97, 104 (1976) (internal quotation marks omitted)).**   *Accord*

*Rodriguez v. Plymouth Ambulance Serv.*, **577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate**

**indifference to serious medical needs of a prisoner constitutes the unnecessary and**

**wanton infliction of pain forbidden by the Constitution.").**   A prisoner is entitled to

reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).**

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011).** The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, **658 F.3d at 750.** *Accord Greeno*, **414 F.3d at 653.** A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the *Eighth Amendment* requires "deliberate indifference to a *substantial* risk of *serious* harm.") (internal quotation marks omitted) (emphasis added).** Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652–53.**

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, **300 F.3d 760, 765 (7th Cir. 2002).** If an official reasonably responds to a risk, even if harm was not averted,

deliberate indifference does not exist.  *Id.*  A claim for medical negligence does not amount to deliberate indifference.  ***Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997)**.  Additionally, a reasonable response differs depending on the capacity of the alleged wrongdoer.  A non-medical prison employee—one who for example handles grievances, or supervises prison operations—will generally not be liable for deliberate indifference if he or she believes the prisoner is receiving adequate medical care, or takes steps to verify that the inmate is receiving care.  ***See Greeno*, 414 F.3d at 655-57.**  However, individual liability may arise on behalf of a non-medical defendant if the defendant is made aware of a specific constitutional violation via correspondence from the inmate and the individual declines to take any action to address the situation.  ***See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015).**  Simply put, a prison official may not escape liability by turning a blind eye to serious harms.  ***Id.* at 781 ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye' to it").**

### C.  Retaliation

An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights.  ***DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).**  Establishing a claim of retaliation requires a prisoner to show the following: (1) that he engaged in a protected activity, (2) he suffered a deprivation

likely to prevent future protected activities, and (3) there was a causal connection between the two.   *See also Watkins v. Kasper*, **599 F.3d 791, 794 (7th Cir. 2010);** *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009).**   A defendant can still prevail, however, if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e. "the harm would have occurred anyway."   *Mays v. Springborn*, **719 F.3d 631, 634-35 (7th Cir. 2013);** *Greene v. Doruff*, **660 F.3d 975, 977-80 (7th Cir. 2011).** At summary judgment, "mere speculation" by the plaintiff is insufficient to carry his burden.   *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, **544 F.3d 752, 757 (7th Cir. 2008);** *Devbrow v. Gallegos*, **735 F.3d 584, 588 (7th Cir. 2013).**

## IV.   ANALYSIS

As an initial matter, the Court will address the weight given to admissions made by the Wexford Defendants in their answer to the complaint (Doc. 30).   The Court will then conduct an analysis of the various claims as to each defendant.

### A.  Judicial Admissions

In Plaintiff's response to summary judgment (Doc. 107), he argues that the medical defendants, including Shearing, Ritz, Trost, and Wexford admitted claims in their answer (Doc. 30) and that the admissions should be considered as judicial admissions for summary judgment.   In the fact section of the memorandum, the Court specifically delineated the admissions the medical defendants made in their answer to

the complaint (*See supra* p. 7, citing Doc. 30, p. 11 ¶ 83-86; Doc. 1-2, p. 10 ¶ 83-86).   Upon receiving Plaintiff's response to their motion for summary judgment, the medical defendants immediately moved to amend or correct their answer to the complaint, arguing that the admissions "were clearly made in error" (Doc. 111).   Plaintiff responded to the request to amend or correct arguing that the request to amend is untimely and that Plaintiff relied on those admissions in addressing the summary judgment arguments (Doc. 117).

"When a party in a lawsuit makes an admission in its pleadings or in its answer to a request for admissions, it makes a judicial admission that can determine the outcome for that lawsuit." ***Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) (citing *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996)).**   Further, a judicial admission trumps evidence presented by the party admitting the allegation.   ***Murrey*, 73 F.3d at 1455.**   At this time, the request to amend (Doc. 111) is still pending and the Court has not yet ruled on that motion.   Plaintiff's brief indicates a reliance on those admissions in responding to the summary judgment motion (Doc. 107).   Thus, at this time, the Court will treat Defendants' answers to ¶ 83-86 as a "binding judicial admission." ***Crest Hill Land Development, LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005) (Defendant's answer to allegation in complaint constituted a binding judicial admission).**   ***See also Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 669**

**(7th Cir. 2007) (judicial admission binding unless withdrawn, allowing the withdrawal of an admission where parties did not appear to act in reliance on the admission),** *abrogated on other grounds by Raybourne v. Cigna Life Ins. Co. of New York,* **700 F.3d 1076 (7th Cir. 2012) (regarding the factors in analyzing an award of attorney's fees).**   Though a Court can exercise discretion by allowing an answer to be amended or an admission to be withdrawn, this Court finds that it would not be appropriate to exercise such discretion in this case because allowing an amendment 22 months after an admission was made, and 2 months after the close of discovery could unfairly prejudice the Plaintiff who had no ability to develop facts surrounding the admitted facts.   Accordingly, the Court will construe the admissions in support of Plaintiff.

### B. Deliberate Indifference Claims for Soy Diet – Medical Defendants

Turning to Plaintiff's claims that the medical defendants were deliberately indifferent—by providing him with an inadequate diet and by denying his request for a soy allergy test—the Court finds that, in light of Defendants' judicial admissions, there is enough evidence to present Plaintiff's claims to the jury.   Constant gastrointestinal distress and drastic weight loss are sufficient to constitute objectively serious medical conditions.   As to the subjective component of deliberate indifference, the medical defendants admitted that Wexford had policies and practices that resulted in violations

of Plaintiff's rights, including that Plaintiff was neglected or denied medical treatment. Defendants also admitted that Wexford's policies do not allow staff to provide proper and necessary treatment and that the staff were deliberately indifferent to Plaintiff's needs by refusing him pain medication, an allergy test, and a soy-free diet.   Defendants further admitted that soy was the cause of Plaintiff's diarrhea and stomach pain.   Given these admissions, there is clearly enough evidence to present Plaintiff's deliberate indifference claims to the jury.

The Court further notes that even without the judicial admissions, there are issues of fact which prevent the Court from awarding summary judgment as to the two deliberate indifference claims.   While Defendants argue that they do not have the ability to prescribe soy-free diets and that IDOC does not offer soy-free diets, Plaintiff has offered evidence that IDOC did offer alternative diets for soy allergies but those diets, or a list of offending foods to avoid, had to be approved by a medical professional (Doc. 107-16, p. 3, 107-17, p. 6, 107-18, p. 4).   Further, medical notes from Dr. Patel and Dr. Young both noted that Plaintiff's complaints of stomach issues appeared to be related to his diet (Doc. 107-2; 107-6; 107-7; 107-11).   Young also prescribed Ensure for Plaintiff due to the fact that Plaintiff lost seven pounds, but Plaintiff testified that he never received the dietary supplement from the prison medical staff.   Patel even indicated that he would consider a soy allergy test, although he ultimately deferred to

prison medical staff (Doc. 107-7). Patel later indicated that Plaintiff had lost fifteen pounds in two months, which he attributed to Plaintiff trying to stay away from soy products (Doc. 107-11). But Ritz and Trost ultimately denied the request for a soy allergy test less than a month later (Doc. 107-12). There is also evidence in the record that Plaintiff was tested for a variety of other ailments which could have caused his stomach issues, and all of those reports came back negative, yet Defendants still refused Plaintiff an allergy test or an alternative diet. While Defendants point to a more recent medical note from Dr. Young indicating that he is not an expert in soy allergies but noting that it is unlikely that soy caused Plaintiff's diarrhea (Doc. 93-7, from August 2016), this contradicts earlier notes from him indicating that if Plaintiff's complaints were true, the culprit appeared to be Plaintiff's diet (Doc. 107-2; 107-6). Thus, the Court finds that there are too many disputes of material fact to award summary judgment to Defendants Shearing, Trost, Ritz, and Wexford at this time.

### C.  Retaliation Claim Against Shearing

The Court also finds that there are issues of fact which prevent the Court from awarding summary judgment as to Defendant Shearing regarding Plaintiff's retaliation claim. Plaintiff testified that he saw Defendant Shearing on May 31, 2013 and that Shearing refused Plaintiff an allergy test because he had filed a lawsuit. Plaintiff had, indeed, filed a lawsuit in 2011 related to his soy diet which was pending in this district at

the time that Plaintiff saw Shearing.   *See Munson v. Gaetz*, **Case No.**
**11-cv-159-NJR-DGW (filed 3/2/2011, closed 9/15/2016).**   Defendant Shearing argues
that there is no evidence of retaliation because he continued Plaintiff's prescription of
Fibercon.   But Plaintiff testified that he requested a soy-free diet and/or an allergy test
and Shearing denied those requests, indicating that because Plaintiff had filed a lawsuit
on the topic and would have to get the Court to order those things (Doc. 100-2, p. 39-40).
Given the statements Plaintiff testified that Shearing made, and the fact that Plaintiff had
a lawsuit pending regarding his soy diet at the time he saw Shearing, there is clearly
evidence in the record from which a jury could find that Shearing was retaliating against
Plaintiff.   The evidentiary disputes preclude the Court awarding summary judgment on
this claim.   Thus, Defendant Shearing's motion for summary judgment on this claim is
also **DENIED**.

### D.  Deliberate Indifference Against Trost Regarding Food Poisoning

By contrast, there is no evidence in the record that Defendant Trost was
deliberately indifferent regarding Plaintiff's alleged food poisoning.   Even accepting
the judicial admissions regarding Plaintiff's healthcare, made by the medical defendants
in their answer, there is no evidence in the record that Plaintiff complained about food
poisoning or that Trost was somehow deliberately indifferent to those complaints.
Plaintiff's complaint alleged that he suffered from food poisoning after eating hot dogs

in January 2014, specifically on January 13, 15, and 19 (Doc. 6, p. 4).   He alleged that he reported symptoms to Menard officials but did not meet with Trost until March 4, 2014 and by that time he was no longer suffering from the symptoms (*Id*.).

But there is no evidence that Trost refused to see Plaintiff for food poisoning. The medical records do not reflect that Plaintiff complained of food poisoning.   Plaintiff was seen by a medical technician on January 13, 2014, asking to be seen for diarrhea, stomach pain, hemorrhoids, intolerance to soy, and a request for a soy allergy test and a different laxative (Doc. 93-2, p. 8).   But there is no indication that he complained about food poisoning.   Plaintiff was seen again by medical technicians on January 20 and 27, but again there is no indication that Plaintiff complained of food poisoning.   Nor has Plaintiff offered any evidence that Trost was aware of Plaintiff's complaints and refused to see him.   Accordingly, the Court finds that Trost is entitled to summary judgment on Plaintiff's Count 4 regarding Plaintiff's food poisoning.

### E.  Deliberate Indifference Claims –Harrington

The Court also finds no evidence of deliberate indifference either to Plaintiff's inadequate nutrition or Plaintiff's medical needs regarding a soy-free diet by Defendant Harrington.   Plaintiff argues that Defendant Harrington failed to address Plaintiff's inadequate medical care after receiving grievances and other correspondence from Plaintiff and his family.   However, the record shows that Harrington looked into

Plaintiff's concerns.   He responded to Plaintiff's relative's letter indicating that Plaintiff's medical concerns were documented and were being treated by the healthcare unit.   The medical records indicate that Plaintiff was seen on numerous occasions by medical staff and he was provided with medication to treat Plaintiff's gastrointestinal issues.   As a non-medical provider in this case, Harrington was allowed to rely on the purported care that Plaintiff was receiving from the healthcare unit.   *See Johnson v. Doughty*, **433 F.3d 1001, 1010 (7th Cir. 2006);** *Hayes*, **546 F.3d at 527 (no deliberate indifference when grievance officer investigated and referred the complaint to medical staff);** *Greeno*, **414 F.3d at 655 (prison official who reviewed complaints and verified with staff that inmate was receiving treatment was not deliberately indifferent);** *Spruill v. Gillis*, **372 F.3d 218, 236 (7th Cir. 2004) (non-medical official is able to rely on the belief that a prisoner is in capable hands when under the care of medical experts).**   Further, wardens are allowed to "relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, **555 F.3d 592, 595 (7th Cir. 2009) (citing** *Durmer v. O'Carroll*, **991 F.2d 64 (3d Cir. 1993)).**   The evidence here indicates that Harrington checked Plaintiff's medical records and saw that he was obtaining treatment from the medical staff.   As a non-medical employee, this was a sufficient response to Plaintiff's medical issues.   *See Perez*, **792 F.3d at 781-82.**   As such, the Court finds that Harrington is entitled to summary judgment on Plaintiff's deliberate

indifference claims.

F.  **Deliberate Indifference Claims – Nelson**

The Court also finds that Nelson is entitled to summary judgment on Plaintiff's deliberate indifference claims regarding his soy diet.   Plaintiff argues that Nelson was present at his May 31, 2013 appointment with Shearing where Shearing, according to Plaintiff's testimony, refused Plaintiff a soy allergy test because Plaintiff had filed a lawsuit.   Plaintiff testified that Nelson was present at the appointment but did not do anything in response to Shearing's statement.   However, the Court finds no evidence of deliberate indifference on Nelson's part.   As a medical technician, Nelson only assists the doctor during doctor visits, by taking vitals and writing down notes.   He does not make treatment decisions, nor does he have the authority to override a doctor's decisions.

Plaintiff makes much of the fact that Nelson overheard Shearing's statement that he was not providing Plaintiff with medical treatment because Plaintiff filed a complaint regarding his treatment, yet Nelson failed to report those statements to any higher authority.   Nelson disputes that he overheard any statements that required reporting, but even still, there is no "free-floating obligation to put things to rights." *Burks*, **555 F.3d at 595.**   Here, Nelson merely sat in on Plaintiff's appointment with Shearing as a part of his duties as a medical technician.   He had no authority to override Shearing's

decisions regarding medical care.   As such, the Court finds that Nelson is also entitled to summary judgment on Plaintiff's deliberate indifference claims regarding his diet.

## V.   CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the medical Defendants' motion for summary judgment (Docs. 92 and 93).   The Court **GRANTS** summary judgment as to Dr. Trost for deliberate indifference related to food poisoning (Count 4) but **DENIES** summary judgment as to Shearing, Trost, Ritz, and Wexford as to Counts 1, 2, and 3.   The Court also **GRANTS** the summary judgment motion (Doc. 100) filed by Defendants Harrington and Nelson.

The only claims which remain for trial are the claims that Shearing retaliated against Plaintiff by denying his requests for medical care (Count 1), the claim against Shearing, Trost, Ritz, and Wexford that Plaintiff was provided with a nutritionally inadequate diet (Count 2), and Plaintiff's deliberate indifference claim against Shearing, Trost, Ritz, and Wexford for deliberate indifference in refusing to diagnose and treat his suspected soy allergy and related symptoms.

**IT IS SO ORDERED**.

DATED: February 21, 2017

s/ **Michael J. Reagan**
Michael J. Reagan
United States District Judge